IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

_____

PHILLIP J. MADRID, individually and on behalf of others similarly situated,

        Plaintiff,

v.                                          No. CIV 00-920 BB/LCS

NEW MEXICO STATE BOARD OF EDUCATION; NEW MEXICO DEPARTMENT OF PUBLIC EDUCATION; MICHAEL J. DAVIS, Superintendent of Public Instruction, New Mexico Department of Education; MARILYN SCARGALL, Director of Professional Licensure, New Mexico Department of Education; JAMES R. BALL, Assistant Director of Professional Licensure, New Mexico Department of Education; JOHN DURAN, General Counsel, New Mexico Department of Education; WILLIE R. BROWN, Senior Attorney, New Mexico Department of Education; all in their individual capacities,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER is before the Court on the application of Plaintiff, Phillip J. Madrid, for a preliminary injunction, and the Court having considered the briefs of counsel and having held an evidentiary hearing on July 17, 2000, FINDS the Plaintiff failed to sustain his burden and therefore the application will be Denied.

### *Discussion*

### *Background Facts*

Plaintiff first received a teaching license from the New Mexico Department of Public Education in 1982 and has taught high school continuously since that time. Plaintiff's teaching licensure expired June 30, 1999, but the policy of the Board of Education was to accept renewal applications for up to one year following the application date.[1] Plaintiff consciously chose not to apply for renewal of his teaching licenses as he was the subject of an investigation by the Las Vegas School Board.

The investigation resulted from a student complaint to a librarian and an assistant principal in January 1999 that Plaintiff had sexually harassed her. As a

---

[1] After one year following the expiration date, the license is considered "lapsed" and the applicant can no longer apply for renewal, but must apply for a new license.

result of those allegations, the school district placed Plaintiff on leave with pay pending the outcome of an investigation of the allegations. In May 1999, the Las Vegas School Board delivered a Notice of Termination of Employment to Plaintiff, but the termination hearing was not held until September 22, 1999. Plaintiff's teaching licenses expired on June 30, 1999.

In the early morning hours of September 23, 1999, the Las Vegas School Board went into executive session to discuss their decision. During the discusion, the Board's attorney came out and approached Plaintiff and his attorney concerning the potential for a compromise. Plaintiff's counsel pointed out the fact that Plaintiff needed to file a renewal application with the Department of Education. They discussed the fact that one of the questions on the license renewal form required Plaintiff to identify whether he had been forced to resign or had resigned as part of a settlement agreement. The Board's attorney assured Plaintiff he could answer "no" to that question and that the Las Vegas Superintendent of Schools would recommend that Plaintiff's license be renewed. The Las Vegas Board subsequently voted to accept an agreement which included, *inter alia*, the following:

3

A. The Board would rescind Plaintiff's proposed termination of employment;

B. Plaintiff would voluntarily resign;

C. Plaintiff would withdraw his Tort Claims Notice;

D. The Board would make a neutral recommendation to any prospective employers;

E. The school would pay the back pay owed to Plaintiff for driver's education; and

F. Plaintiff could answer "no" to the questions on the Licensure Application regarding forced resignation; and

G. The Las Vegas Superintendent would recommend him for continued licensure.

Plaintiff submitted his letter of resignation to the Las Vegas School Board on September 23, 1999.

Plaintiff was already teaching at the Peñasco High School in October 1999, so after the agreement with Las Vegas he submitted his application for license renewal to the Department of Education. However, since Plaintiff's attorney had made inquiry of the Department of Education prior to negotiating the agreement

4

with the Las Vegas School Board, James Ball, the Department's Assistant Director of Professional Licensing, had "red flagged" the file. After reviewing Plaintiff's application, Mr. Ball was disturbed by Plaintiff's negative response to the fourth question: "Have you ever resigned, entered into a settlement agreement or otherwise left employment as a result of alleged misconduct?" On December 9, 1999, therefore, Mr. Ball sent a letter informing Plaintiff, *inter alia*:

> Your "no" response to question 4, which asked whether you had ever resigned or otherwise left employment as a result of alleged misconduct, has prompted us to withhold issuance of those licenses pending an inquiry into your continued suitability to hold these licenses. … While we understand that you deny any wrongdoing and that you have not been charged with any crimes, your decision to answer "no" to question 4 has prompted us to intensify our already ongoing inquiry into possible action against *all* of your licenses. We should have our inquiry completed before month's end and will notify you should we decide to take action against any of your school licenses.

On January 26, 2000, Plaintiff was sent a Notice of Contemplated Action on his administrative K-12 license, which was Plaintiff's only license then current.[2] Plaintiff challenged the Notice and a hearing officer was appointed on March 2, 2000, with a hearing scheduled for May 5. Plaintiff requested a continuance and

---

[2] Plaintiff completed the 1999-00 school year teaching at Peñasco while his application for the renewal of his teaching licenses remained pending.

the hearing was rescheduled for and occurred on May 31, 2000. The hearing examiner entered his recommendation on July 21, 2000, and the New Mexico Board of Education is scheduled to vote on the recommendation on August 25, 2000.

### *Due Process*

Plaintiff argues "that when the State Department of Education makes a determination not to renew someone's license pending the outcome of the hearing process they have made a preliminary determination to deprive that person of their property interest in continued licensure." (Plaintiff's Brief at 9). Initially, it must be noted that except for the existing administrator's license, which is not the focus of the preliminary injunction, it is doubtful that Plaintiff has a property interest entitled to protection. *See Burns v. Harris County Bail Bond Bd.*, 139 F.3d 513, 520 (5th Cir. 1998). By intentionally waiting until October 1999 to seek renewal, three months after the expiration date of his teaching credentials, Plaintiff has little legal support for a property interest in the expired licenses. *Id.* Even if Plaintiff could establish a property interest in the renewal of his license, however, he would have to prove that the Due Process Clause[3] guaranteed him a

---

[3] U.S. CONST. amend. XIV, Cl. 1. *See Shanley v. Northeast Indep. Sch. Dist.*, 462 F.2d 960 (5th Cir. 1972).

hearing in less than the eight months between the time Plaintiff filed his renewal application in October 1999 and the hearing originally scheduled for May 2, 2000.[4]

The law requires that a post-license suspension hearing be "one that would proceed and be concluded without appreciable delay." *Barry v. Barchi*, 443 U.S. 55, 66 (1979). In the present situation, of course, Plaintiff's relevant licenses had expired before any administrative action was proposed, so the question becomes whether a hearing eight months following Plaintiff's application for license renewal violates due process. While no definitive precedent was provided or discovered, the weight of legal authority appears contrary to Plaintiff's contention. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 547 (1985) (decision nine months delay post-termination no violation where cause was a thorough investigation); *Rumford Pharmacy, Inc. v. City of East Providence*, 970 F.2d 996 (1st Cir. 1992) (eleven months before hearing on liquor license transfer no violation); *In re Emberton*, 262 A.2d 899 (N.J. Super. 1970) (no violation where 2-year delay between hearing and license suspension). *But see Aurora Enter., Inc. v. State Dept.*

---

[4] Defendants argue that but for Plaintiff's request for a continuance of the May 2 hearing by the hearing officer, the State School Board would have resolved the entire matter at its June meeting.

*of Bus. Regulation*, 395 So. 2d 604 (Fla. App. 1981) (violation where no hearing scheduled 50 days after license suspension). Therefore, as to the due process challenge, Plaintiff has failed to carry his burden on the first requirement for preliminary injunction, to-wit: that he is likely to prevail on the merits. *See Walmer v. U.S. Dept. of Defense*, 52 F.3d 851, 854 (10th Cir. 1995).

### *Equal Protection*

Plaintiff next argues that he is deprived of the equal protection of law[5] since the consequences of the Las Vegas allegations and resulting settlement are different as to one whose license is up for renewal and one whose license is still in effect when charged with the same conduct. Plaintiff's argument is basically that since his license had expired and the Department took eight months to investigate, he cannot apply for a teaching job until the Board rules, as he has no valid license. Plaintiff hypothesizes that if he had received a Notice of Action during the nine years his license was still valid, he would have retained his license during the investigation and still been able to seek employment during the investigation. It must be noted this argument ignores the fact the original Notice of Contemplated Action was the result of what the Department perceived as a dishonest response

---

[5] U.S. CONST. amend. XIV, § 1. *See generally Wallach v. City of Pagedale*, 376 F.2d 671 (8th Cir. 1967); *Herro v. City of Milwaukee*, 817 F. Supp. 768 (E.D. Wis. 1993).

to a question on Plaintiff's application for renewal.  Obviously, if his teaching licenses had not expired or been expiring, he would not have filed such an application and thus his answers could not have been a subject of inquiry by Defendants.  Since the essence of equal protection is the difference in treatment of those similarly situated,[6] Plaintiff must show those who answered question 4 in the negative on similar facts were treated differently than Plaintiff.  The record contains no such showing.

Secondly, Plaintiff admits that all teachers are treated the same with regard to allegations to or by a school board.  Once such charges are levied, the Department dispatches an investigator and, if found warranted, issues a Notice of Contemplated Action.  The testimony also indicated that following Notice and if requested, a hearing officer will be appointed who will take evidence and make recommendations.  Nor did Plaintiff challenge the evidence at the injunction hearing to the effect that this process often takes several months.  Plaintiff's challenge is based on the premise that this multiple month investigation has a different impact on him than on a teacher whose license has not already expired at the outset of this process.  However, a uniform licensing process that might

---

[6] *Aves By & Through Aves v. Shah*, 914 F. Supp. 443 (D. Kan. 1996), *aff'd*, 124 F.3d 216 (10th Cir. 1997).

9

impact differently situated applicants differently does not violate the Equal Protection Clause if it is facially neutral and uniformly applied. *Scariano v. Justices of Sup. Ct., State of Ind.*, 38 F.3d 920 (7th Cir. 1994); *Wedges/Ledges of Calif., Inc. v. City of Phoenix*, 24 F.3d 56 (9th Cir. 1994); *Tom's Tavern, Inc. v. City of Boulder*, 526 P.2d 1328 (Colo. 1974). On this claim also, then, Plaintiff has failed to show he is likely to prevail on the merits.

Even if Plaintiff had shown he was likely to prevail on either his due process or equal protection claims, however, it is not clear he could satisfy the other three prerequisites for a preliminary injunction. For example, Mr. Ball testified that as a secondary math teacher, Plaintiff would have little problem obtaining a position if the New Mexico Board grants him a license at its August meeting. Plaintiff's testimony on irreparable injury was therefore at least seriously challenged. Likewise, on the third and fourth elements, the issues appear at least evenly balanced. While the injury to Plaintiff may be more direct than that to Defendants, if it is determined Plaintiff is guilty of any of the Las Vegas allegations, Defendants would have violated their public duty and additionally be harmed in public perception if forced to issue Plaintiff a license. The fourth element, the public interest, is similarly counterbalanced for the same reasons. In

10

short, Plaintiff has not met his burden of persuasion on the application and it must be Denied.

## O R D E R

For the above stated reasons, Plaintiff's Application for a Preliminary Injunction is DENIED.

Dated at Albuquerque this 1st day of August, 2000.

　　　　　　　　　　　　　　　　　　　　　　　　　BRUCE D. BLACK
　　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge

**Counsel for Plaintiff:**

　Warren F. Frost, Tucumcari, NM

**Counsel for Defendant:**

　Michael Dickman, Santa Fe, NM